**INTERNAL REVENUE SERVICE, LOS ANGELES DISTRICT, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

and

**National Treasury Employees Union, Intervenor.**

No. 88–1550.

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1990.

Decided May 1, 1990.

Robert D. Kamenshine, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, were on the brief, for petitioner.

James F. Blandford, Atty., FLRA, with whom William E. Persina, Sol., and Arthur A. Horowitz, Associate Sol., FLRA, were on the brief, for respondent.

Cary P. Sklar, with whom Gregory O'Duden and Elaine Kaplan were on the brief, for intervenor.

Before WALD, Chief Judge, MIKVA, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case presents the question whether a union's bargaining proposal, which would allow an employee to designate his or her work station as a smoking area, conflicts with a General Services Administration ("GSA") regulation which accords to "agency heads" the responsibility for designating smoking areas. Under the Federal Service Labor–Management Relations Act of 1978 ("FSLMRA" or "the Act"), the duty to bargain does not extend to matters "inconsistent with any Federal law or any Government-wide rule or regulation." 5 U.S.C. § 7117(a)(1) (1988). The subject of smoking areas arose during the course of contract negotiations between the petitioner, the Los Angeles District of the Internal Revenue Service ("the IRS"), and the intervenor, the National Treasury Employees Union ("the Union"). The Union offered a six-point proposal, part B of which states that "[p]rivate offices, individual desks, and/or work stations *shall be designated* as cigarette smoking areas *at the request of the employee.*" (emphasis added). In response to the IRS's refusal to bargain over several parts of the proposal, the Union filed a petition with the Federal Labor Relations Authority ("FLRA"). The FLRA ruled that the disputed sections of the proposal were negotiable, *inter alia*, because they did not conflict with the GSA's Federal Property Management Regulation on smoking, 41 C.F.R. § 101–20.105–3 (1989) ("the Regulation"). The IRS petitions for review of the FLRA ruling as it pertains to part B. We disagree with the FLRA. Part B of the proposal directly conflicts with the Regulation by placing the situs of authority to designate smoking areas with the employees rather than with the agency. We therefore grant the IRS's petition for review.

## I.

During negotiations with the IRS, the Union offered the following proposal:

*Designated Smoking Area*

A. Break/Lunch room(s) will contain areas which are designated as smoking and nonsmoking areas. The employer will provide an air purifying/filtering system for all such areas.

B. Private offices, individual desks, and/or work stations shall be designated as cigarette smoking areas at the request of the employee. Any area so designated shall be identified by appropriate signs.

C. To the maximum extent possible, the employer shall separate smokers and nonsmokers in the work area.

D. The employer shall provide an approved air purifier for each such office, desk, and/or work area designated as a smoking area....

E. Management will install floor to ceiling partitions between smoking and nonsmoking areas.

F. Management will make reasonable accommodation for employees who prefer or object to smoking.

The IRS alleged that parts B, C, D, and E were outside its obligation to bargain under the Act. In response, the Union filed a petition for review of the negotiability issues with the FLRA. The IRS argued before the FLRA, *inter alia*, that the disputed sections of the proposal were not bargainable under the Act because they conflicted with the GSA's regulation governing smoking in all GSA-controlled buildings nationwide. The Union denied that its proposal was inconsistent with the Regulation. It clarified the language, maintaining that, when viewed in its entirety, the proposal was intended to divide the workplace into separate smoking and nonsmoking areas, giving each employee the opportunity to choose to be placed with smokers or non-smokers while not interfering with management rights.

Regarding part B of the proposal, the IRS raised two potential points of conflict with the Regulation. First, it argued that part B overlooked certain configuration requirements applicable to designated smoking areas. Paragraph (b)(1) of the Regula-

tion prohibits smoking in general office space except as permitted under paragraph (c)(2)(iii), i.e., when the "office space is configured so as to limit the involuntary exposure of non-smokers to secondhand smoke to a minimum." 41 C.F.R. § 101–20.105–3(b)(1), (c)(2)(iii). Second, the IRS noted that by conferring responsibility for designation on the employee, part B supplanted the judgment the agency head was supposed to make. The FLRA, however, did not reach the "agency head" issue in its ruling. In finding no conflict between part B of the proposal and the Regulation, the FLRA relied upon the provisions of parts B, C, D, and E in their entirety. It reasoned that because part C calls for the maximum feasible separation of smokers and nonsmokers, and parts D and E require the installation of partitions and the use of air purifiers to supplement the existing ventilation system, the risk of involuntary exposure to secondhand smoke was minimized sufficiently to satisfy paragraph (c)(2)(iii).

The FLRA rejected all other arguments proffered by the IRS and ordered it to bargain over the Union's proposal.

## II.

On petition for review, the IRS contests only that aspect of the FLRA's decision which requires it to bargain over part B of the Union's proposal. The IRS repeats here the two-pronged argument it offered to the FLRA, only this time it emphasizes the conflict with the agency head's responsibility for designating smoking areas. By mandating the grant of employees' requests to designate their work areas as smoking areas, the IRS argues, part B of the proposal would take from the agency head the responsibility for making a judgment about when and whether to designate a smoking area. Second, the IRS contends that the proposal subverts specific criteria outlined by the Regulation which the agency head is required to consider before designating a smoking area. The regulation states:

> Agency heads are to be given the responsibility to determine which areas are to

be smoking areas and which are to be non-smoking areas. In exercising this responsibility, agency heads are to give appropriate consideration to the views of the employees affected and/or their representatives and are to take fully into consideration the health issues involved. . . .

41 C.F.R. § 101–20.105–3(a)(3). Under paragraph (c)(2)(i), "[a]gency heads shall establish" designated smoking areas. And, as mentioned above, office space may be designated as a smoking area under paragraph (c)(2)(iii)

> providing that the office space is configured so as to limit the involuntary exposure of non-smokers to secondhand smoke to a minimum; e.g., the office space involved must be large enough and sufficiently ventilated to provide separate smoking and non-smoking sections which protect the non-smokers against involuntary exposure to smoke.

41 C.F.R. § 101–20.105–3(c)(2)(iii).

### A. *Standard of Review*

■ The FLRA argues that its negotiability determination is entitled to special deference, reversible only if the underlying reasoning is not "reasonably defensible." This court, however, has established that the FLRA's determinations on whether a bargaining proposal is inconsistent with a federal law or regulation do not warrant special deference because they do not involve interpretations of the FSLMRA. *See Department of the Army, U.S. Army Aberdeen Proving Ground Installation Support Activity v. FLRA*, 890 F.2d 467, 474 (D.C.Cir.1989) (*"Aberdeen"*). Therefore, we review *de novo* the FLRA's consistency finding.

### B. *Conflict with the Regulation*

■ As a threshold matter, the FLRA argues the IRS did not raise below its objection that part B supplants the ultimate responsibility accorded to "agency heads" under the Regulation. Although the IRS did not press this point before the Commission, it certainly raised the argument suffi-

ciently to preserve the issue. It said below:

> The regulations strive to protect non-smokers, *and require agency heads to determine* non-smoking and smoking areas "giv[ing] appropriate consideration to the views of the employees affected and/or their representatives and ... tak[ing] fully into consideration the health issues involved." § 101–20.105–3(a)(3). A proposal whereby one employee could establish a smoking area simply by requesting that designation is thus inconsistent with these GSA regulations.

(emphasis added).

Next, the FLRA tries to bring this case within the line of precedents holding that an agency which has a large measure of discretion regarding a determination must bargain as to its exercise of that discretion or, rather, to the extent of that discretion. *See, e.g., Department of the Treasury, U.S. Customs Service v. FLRA*, 836 F.2d 1381, 1385–86 (D.C.Cir.1988). The IRS relies on *Aberdeen*, in which this court addressed the negotiability of a union proposal which would afford to a personnel supervisor the opportunity to refute a Medical Review Officer's ("MRO's") final determination on an employee's drug testing results. We found this proposal inconsistent with Health and Human Service's government-wide guidelines on drug testing because the guidelines provided that the MRO was responsible for "final review" of drug testing results and was the "only" person "authorized to order reanalysis" of drug tests. *Aberdeen*, 890 F.2d at 471–72. The FLRA argues the case *sub judice* does not present such direct conflict because the Regulation uses the term "agency head" only in the generic sense, unlike the regulatory provisions at issue in *Aberdeen*.

We agree with the IRS that, even if the Regulation confers "generic" discretion on agency heads, part B would effect an abandonment of the agency head's obligation to implement the Regulation. If part B had been drafted to require the grant of employee requests "to the extent feasible," then it could be argued that the situs of

authority would still be with the agency head. Under that scenario, precedents requiring an agency to bargain to the extent of its discretion would apply. But part B, by its plain terms, would allow an employee to designate his or her desk as a smoking area irrespective of whether "the office space involved [were] large enough and sufficiently ventilated to provide separate smoking and non-smoking sections," as stated in paragraph (c)(2)(iii) of the Regulation.

The FLRA tries to avoid this consequence by focusing on the proposal as a whole: Although employees would have an automatic right under part B, this prerogative would be constrained somewhat by other provisions. Smokers and non-smokers would be separated to the maximum extent possible (part C), every area designated for smoking would be supplied with "smoke eaters" (part D), and floor-to-ceiling partitions would be installed between smoking and non-smoking areas (part E). Even if we accept the FLRA's contention that the proposal must be read in its entirety, conflict ensues. An employee's request under part B must be granted whether or not the other provisions of the proposal will have the effect of satisfying paragraph (c)(2)(iii) of the Regulation, i.e., whether or not the request is feasible in the given office space. The FLRA correctly notes that the IRS has offered no evidence that the "minimum exposure" requirement of (c)(2)(iii) cannot be met in the relevant GSA buildings. But this does not eliminate the conflict presented by part B of the proposal.

Part B effectively displaces the agency head's obligation to designate smoking areas. Unfortunately for the Union's efforts to meet this criticism, the Union is not allowed to narrow the terms of its proposal at this stage of the proceedings; this court must review the same proposal reviewed by the FLRA. *See Overseas Educ. Ass'n v. FLRA*, 827 F.2d 814, 818 (D.C.Cir.1987).

### III.

For the reasons stated, we reverse the FLRA's decision and grant the IRS's peti-

tion for review. We emphasize that the IRS only challenged the negotiability of part B in its petition. To the extent part B is severable, the IRS must comply with the FLRA's order to bargain over other parts of the proposal. As a practical matter, however, the Union should be free to re-fashion its entire proposal and resubmit it to the IRS for bargaining.

*So ordered.*